[No. 40182.    Department Two.    August 29, 1968.]

*In the Matter of the Adoption of* INFANT BOY JOHN DOE, *a Minor,* GEORGE BILO *et al., Appellants,* v. MEDINA CHILDREN'S SERVICE, *Respondent.\**

*Howe, Davis, Riese & Jones, Lauren Studebaker,* and *Richard A. Derham,* for appellants.

*Mucklestone & Mucklestone, John P. Mucklestone,* and *Patricia J. Mucklestone,* for respondent.

\*Reported in 444 P.2d 800.

HILL, J.—Mr. and Mrs. George Bilo applied for leave to adopt the infant boy (born August 11, 1966) who had been placed with them for possible adoption (September 15, 1966) by the Medina Children's Service, an approved child-placing agency (hereinafter referred to as Medina).[1] After some 4 months, the infant was removed from their custody (January 23, 1967), following the agency's investigation of a report from a neighbor which raised a question as to the Bilos' fitness as adoptive parents, or at least as to Mrs. Bilo's fitness. After the infant's removal from their home, the Bilos commenced this adoption proceeding (filed March 2, 1967). Medina refused its consent to the adoption. The Bilos requested the trial court to dispense with the consent of Medina to the adoption, as provided for in RCW 26.32.030(5).[2] (Medina had previously been awarded permanent custody of the child to arrange for his adoption, with authority to consent to such adoption.) After a full trial on both issues,[3] i.e., the request for leave to adopt and

[1]As used in our Adoption Act (RCW 26.32), an " 'approved agency' means any public or private association, corporation or individual who has custody of a minor child with lawful authority to place such child for adoption. . . ." (RCW 26.32.010)

The mother of this particular child (born out of wedlock) was, by an order of the superior court (King County), dated August 23, 1966, deprived of all parental and maternal rights in said child; and he was placed in the permanent custody of Medina with authority to consent to the adoption of said child.

[2]"Written consent to such adoption must be filed prior to a hearing on the petition, as follows:

" . . .

"(5) If the person to be adopted is a minor and has been permanently committed upon due notice to his parents by any court of general jurisdiction to an approved agency, then by such approved agency, in which event neither notice to nor consent by its parents in the adoption proceeding shall be necessary: *Provided,* That if the approved agency refuses to consent to the adoption, the court, in its discretion, may order that such consent be dispensed with. . . ." (RCW 26.32.030(5))

[3]Both issues may be determined in the same hearing. *In re Reinius,* 55 Wn.2d 117, 127, 346 P.2d 672 (1958). The same evidence may, as in this case, go to the qualifications of those desiring to be adoptive parents and the reasonableness of the approved agency's refusal to consent.

the request that, as the statute permits, the court dispense with Medina's consent, the trial court found that Medina had not acted unreasonably in withholding its consent to the adoption by the Bilos, and that the welfare of the child would be best served by the child remaining in the care, custody and control of Medina.

The Bilos appeal from the dismissal of their adoption proceeding and asked for a rehearing.

The assignments of error are:

The trial court erred in refusing to allow petitioners to cross-examine respondent's witness, Ardith Maynard, regarding her bias growing out of the emotional turmoil surrounding the adoption of her own child. Assignment of error No. 1.

The trial court erred in interpreting In Re Reinius to require that the opinions and conclusions of the adoption agency be given an almost conclusive "great weight" and consequently failed to exercise sound judicial discretion. Assignment of error No. 2.

The trial court erred by not placing the burden of proof upon the agency to show that its change of position was reasonable and not arbitrary. Assignment of error No. 3.

Peculiarly enough no assignments of error are made to the findings of fact entered by the trial court. Findings Nos. 5, 7, and 8 are deemed to be particularly pertinent. They are as follows:

That after said child had been placed with petitioners, respondent was informed that Josephine Bilo habitually drank considerable quantities of alcoholic beverages, and that she frequently requested other parties to purchase liquor for her, and that said child was on occasion not cared for properly; that as the result thereof, respondent called petitioners to come to its offices where upon inquiry of respondents as to their problems, petitioners denied the existence of any problem and became very emotional, and that at that time on January 23, 1967, respondent removed said infant from the care of the petitioners. Finding of fact No. 5.

That petitioner, Josephine Bilo, has a problem relating to her consumption of alcoholic beverages; that the extent

of such problem was not fully known to petitioner, George Bilo, until the trial of this matter;[4] and that there has been just too much drinking of intoxicating liquor in the Bilo family. Finding of fact No. 7.

That there has been some instability in the marriage of petitioners; and that as a result of this trial there is a probability that there will be more instability. Finding of fact No. 8.

These unchallenged findings adequately support the further findings—Nos. 10 and 11—which are also in the nature of conclusions:

That Medina Children's Service has not acted unreasonably in withholding its consent to the adoption of said infant by petitioners. Finding of fact No. 10.

That the welfare of the subject infant child would best be served by said child remaining in the care, custody and control of respondent [Medina]. Finding of fact No. 11.

The appellants, by ignoring the facts on which the decision of the court must ultimately be based, have by their assignments of error directed their attack to matters of form, rather than substance, on how the decision was reached rather than the propriety of the decision itself.

It is our view that if we were to agree with all of the assignments of error (and we agree with none of them), the final decision must, on the basis of the record, be just as the trial court expressed it in findings of fact Nos. 10 and 11.

Findings of fact Nos. 5, 7, 8, 10 and 11, which we have quoted, do not depend upon the testimony of Ardith Maynard and would be the same if her testimony was entirely

---

[4]Without elaborating the evidence in support of the finding that Mr. Bilo did not know the extent of Mrs. Bilo's drinking problem, we would point out that Mr. Bilo testified that he purchased whiskey each week—sometimes a pint, sometimes a fifth—and the only limitation placed on Mrs. Bilo's use thereof was that there be a drink or two left for him on Sunday evening. The evidence showed that this source of supply was inadequate for Mrs. Bilo and, not wishing Mr. Bilo to know that she was supplementing the amount thus provided, she was frequently having friends purchase whiskey for her. This augmentation was unknown to Mr. Bilo until he heard the testimony at the trial.

eliminated (disposing of assignment of error No. 1). Regardless of who had the burden of proof on any issue, the testimony clearly made it impossible to say that Medina was unreasonable in its refusal to consent to the adoption (disposing of assignment of error No. 3). Regardless of the weight attached to the opinions and views of Medina—whether it be great, slight, or entirely negligible—other evidence established some instability in the Bilo marriage with a "probability that there will be more"; a drinking problem on the part of the one seeking the adoption, with some neglect of the infant; and adequately supported the ultimate finding of the trial court that the welfare of the child was best served by leaving him in the care, custody and control of Medina (disposing of assignment of error No. 2).

Despite our feeling, just expressed, that the assignments of error are not dispositive of the case, we will consider them seriatim:

The first deals with the refusal of the trial court to allow cross-examination of the witness, Ardith Maynard, who made the original report to Medina, so that her bias against the Bilos might be shown. The Bilos claim that this bias comes from Mrs. Maynard's emotional turmoil caused by her own child having been taken from her and placed for adoption.

The Bilos offered to prove by further cross-examination the nature of the serious marital difficulties experienced by the witness and her husband, beginning before her first report to Medina concerning the Bilos. Because of those difficulties, the witness and her husband were divorced and a child born to the witness some months later, with its paternity under some cloud, was released to an adoption agency. It was urged that Mrs. Maynard was jealous of the happiness of the Bilos and the infant placed with them, and that this prompted her to make her report against them to Medina. It was urged that these matters, if developed on cross-examination, would completely discredit the witness.

It developed that the witness and her husband had been reconciled since this proceeding commenced, and they had regained custody of the baby released for adoption.

The trial court refused to allow cross-examination as to her difficulties, saying that the parties had settled the matter for themselves and no good purpose could be served by reopening old wounds—that the parental fitness of the Bilos was the only issue before the court.

■ This was not a jury case. The trial court being fully advised as to the purpose of the proposed cross-examination and what it was intended to elicit; and, knowing what effect such testimony would have upon its judgment, properly spared the witness the ordeal which would have embarrassed, humiliated, and degraded her to no good purpose. One might well ask in this circumstance, who is seeking vengeance on whom and why?

We would make it clear, moreover, that contrary to the Bilos' view of the matter, the record reveals a plethora of evidence apart from that of Mrs. Maynard to substantiate the court's findings. Mrs. Maynard was not, as they assert, the key witness against them, except that her report launched the inquiry.

The second assignment of error suggests that the trial court put too much weight on the opinions and conclusions of Medina as an approved agency.

No one can read the record in this case without being aware that the trial court was often in vigorous disagreement with the theories, opinions and conclusions of Medina, as expressed by counsel. However, when it came to the moment of decision of the actual issues before the court, it was not a matter of theories, opinions and conclusions in the abstract, but of facts established by testimony from numerous witnesses.

While *In re Reinius,* 55 Wn.2d 117, 127, 346 P.2d 672 (1958), was much discussed, there is no indication that the trial court, in making its findings of fact and drawing its conclusions therefrom, was in any way misinterpreting that decision or giving undue weight to the opinions and conclusions of Medina.

In its memorandum decision, the trial court said:

> *After a complete review of the facts in this case, and having in mind the future welfare of this child,* I have come to the conclusion, somewhat reluctantly, that the petition of the Bilos should be dismissed. (Italics ours.)

We do not interpret the word "reluctantly" to mean that the trial court was being compelled by *Reinius* to do something it would not otherwise have done, but rather that it was referring to a natural "sympathy for the Bilos in their present predicament."[5]

The trial court had the advantage of hearing and seeing the witnesses. After our own review of the cold record, we can only say that we believe the trial court could have arrived at no other conclusion.

The wording of the third assignment of error is somewhat baffling. It says the trial court erred by not placing the burden of proof upon the agency to show that its change of position was reasonable and not arbitrary. No citation to the record is made indicating where or how that issue was raised.

Medina's position was (and it is undisputed) that a tentative placement of the infant boy (of which Medina had care, custody and authority to place for adoption) had been made with the Bilos with the hope that the tentative placement might result in an adoption. It was in no sense final.

█ There is no statutory or case authority cited, and we know of none, that prevents an approved child-placing agency from terminating such a tentative placement whenever it believes that the arrangement is not working out satisfactorily or that the welfare of the child requires it. It is not only the agency's right, as the guardian of the child, but its duty to remove the child which the court has placed in its care and custody from what it believes to be an unsuitable environment.

It must be noted that the Bilos have a somewhat tenuous foothold at the threshold of the court, gained by being fleet of foot in the manner of the Pellands in the *Reinius* case.

---

[5]Memorandum decision of trial court.

They have no legal right to adopt any child, but come asking a privilege—a privilege desired by many and granted to relatively few. The burden of establishing their fitness as adoptive parents of a particular child is clearly upon them.

If consent is necessary from a parent, or an approved agency standing in loco parentis,[6] *Reinius* and reason place the burden of proof on the would-be adoptive parents of establishing that it is in the best interests of the child that the court dispense with the consent required by the statute. It cannot be contended that the evidence of the Bilos met that test.

The judgment of dismissal is affirmed.

FINLEY, C. J., HUNTER, HAMILTON, and NEILL, JJ., concur.

---

October 22, 1968. Petition for rehearing denied.

---

[6]The approved agency must give the reason for its refusal, as Medina did in this case.